## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**ADMIRAL INSURANCE COMPANY**,

    Plaintiff,

    *v.*

**COMLY ROAD HOLDINGS, LLC, et al.,**

    Defendants.

**CIVIL ACTION**

**NO. 2:25-CV-00279**

### <u>MEMORANDUM</u>

**Marston, J.**                                                  **December 17, 2025**

Plaintiff Admiral Insurance Company ("Admiral") insured Defendant Comly Road Holdings, LLC, d/b/a the Union Tap ("Comly Road"),[1] from June 12, 2022 through June 12, 2023, pursuant to the terms of Admiral Insurance Policy CA000045657-01 (the "Policy"). The Policy contains a $100,000 sublimit applicable to assault or battery claims (the "AB Sublimit"), which limits the potential recovery per event (to $100,000) and in the aggregate for all assault or battery claims initiated during the policy period (also, to $100,000). Comly Road, its owner, Roman Jamera, and several related entities and individuals who are or may be insured by the Policy ("Insured Defendants"), have been sued in two separate state court actions: *Pedraza-Zayas v. The Union Tap* ("*Pedraza-Zayas* Suit") and *Corona, Sr. v. The Union Tap* ("*Corona* Suit").[2] Both state court lawsuits assert a number of claims, including claims for assault and battery.

---

[1] The Union Tap is a Philadelphia bar. (Doc. No. 1-4 at ¶ 2.)

[2] Both of these Suits were filed in the Pennsylvania Court of Common Pleas. (*See* Doc. Nos. 1-3, 1-4.)

Admiral brings the instant interpleader and in-the-nature-of-interpleader complaint pursuant to 28 U.S.C. § 1335[3] against Insured Defendants, as well as the plaintiffs in the *Pedraza-Zayas* and *Corona* Suits, to interplead the AB Sublimit to fund continued defense and/or any settlement/judgment.  (Doc. No. 1 at ¶ 19.)  Admiral has also filed a motion pursuant to 28 U.S.C. § 1335(a)(1) and Federal Rule of Civil Procedure 67(a) seeking leave to deposit with the Court the remaining amount of the AB Sublimit.  And Admiral requests a court order pursuant to the interpleader statute declaring that the AB Sublimit applies to both the *Pedraza-Zayas* and *Corona* Suits and that Admiral has no further liability to Insured Defendants, as well as the plaintiffs in the *Pedraza-Zayas* and *Corona* Suits, for claims arising out of the Policy as to these Suits.

Two of the Insured Defendants, Comly Road and Roman Jamera, (together referred to as "Comly Road Defendants") have moved to dismiss Admiral's interpleader complaint arguing that Admiral fails to satisfy the jurisdictional elements necessary to bring a federal interpleader action under 28 U.S.C. § 1335 and fails to state a claim upon which relief can be granted.  (Doc. No. 40).  Admiral opposes the motion and requests that the Court enter an injunction pursuant to 28 U.S.C. § 2361 and grant its request for declaratory judgment that the AB Sublimit is applicable to claims alleged in both the *Pedraza-Zayas* and *Corona* Suits.

---

[3] "§ 1335 addresses both *strict interpleader actions*, in which the 'plaintiff' is neutral and therefore a stakeholder with no interest in the corpus at issue, and *actions in the nature of interpleader*, in which the 'plaintiff' claims an interest in all or part of the corpus."  *See AmGuard Ins. Co. v. SG Patel and Sons II, LLC*, 999 F.3d 238, 246 (4th Cir. 2021) (emphasis added).

The Court held oral argument on October 23, 2025. For the reasons that follow, the motion to dismiss is denied and the Court will grant Admiral's requests for an injunction under 28 U.S.C. § 2361 and declaratory judgment.[4]

## I.    Background

Taking the allegations in Admiral's Complaint as true, the relevant facts are as follows.[5]

### A.    The Policy

On June 12, 2022, Admiral issued a primary insurance contract CA000045657-01 to Comly Road for a policy period spanning June 12, 2022, through June 12, 2023. (Doc. No. 1 at ¶ 1.) The coverage part of the Policy includes the following limits of insurance (as relevant here):

| LIMITS OF INSURANCE | |
| --- | --- |
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit | $2,000,000 |
| Liquor Liability Each Common Cause Limit | $1,000,000 |
| Liquor Aggregate Limit | $1,000,000 |
| Assault and Battery Each Event | $100,000 |
| Assault and Battery Aggregate | $100,000 |

(Doc. No. 1-2 at 6.) Notably, the Policy states that there is a $100,000 limit for *each* event and in the *aggregate* for assault and battery claims during the Policy's coverage period. (*Id.* at 67.) This means that any assault and battery claim that occurs within the coverage period and meets the $100,000 maximum extinguishes any future claims under the AB Sublimit for that policy period. (*Id.*)

---

[4] As noted, Admiral has filed a Rule 67(a) Motion. The Court will grant this motion in a separate memorandum that will be filed simultaneously.

[5] The district court, when considering a facial challenge under Rule 12(b)(1) or a motion under Rule 12(b)(6), "[i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

The Policy's endorsement for the AB Sublimit defines an "[a]ssault or battery event" as:

> any act that includes physical assault or physical battery committed against an individual person by anyone.  More than one "assault or battery event" committed against the same person will be deemed to be a single "assault or battery event."

(*Id.* at 69.)  The Policy does not otherwise define "assault" or "battery."  However, Section A of the endorsement also provides:

> A.    "Except to the extent coverage is afforded under COVERAGE D below, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", "injury" or damages of any kind, including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with:
>
> > 1.    The actual, alleged or threatened assault or battery by anyone of any person while on or adjacent to the premises of any insured; or
> >
> > 2.    The actual, alleged or threatened assault or battery by anyone of any person if in any way connected with the operations of any insured; or
> >
> > 3.    The negligent employment, negligent investigation, negligent supervision, negligent reporting to the proper authorities or failure to so report, negligent retention or negligent hiring by any insured or any person or entity for whom any insured is or ever was legally responsible in claims alleging actual, alleged or threatened assault or battery by anyone of any person; or
> >
> > 4.    The failure of any insured or any person or entity for whom any insured is or ever was legally responsible to prevent, suppress, mitigate or respond to actual, alleged or threatened assault or battery by anyone of any person; or
> >
> > 5.    The failure of any insured or any person or entity for whom any insured is or ever was legally responsible to provide an environment safe from assault or battery, or to warn of the dangers of the environment which could lead to or contribute to assault or battery; or
> >
> > 6. The assumption of the tort liability of another by

> any insured in any contract or agreement, including an
> "insured contract", if the claim arises out of Paragraphs 1
> through 5 above.

(*Id.* at 67.)  And the endorsement limits recovery under the AB Sublimit as follows:

> The Assault or Battery Sub-Limits of Insurance shown above and
> the rules below fix the most we will pay regardless of the number
> of:
>
> (1) Insureds
>
> (2) Claims made or "suits" brought; or
>
> (3) Persons or organizations making claims or bringing "suits"

(*Id.* at 69.)

Last, the AB Sublimit is limited such that any expenses related to Admiral's duty to

defend assault and battery claims are paid against the $100,000 limit.  This portion of the

endorsement states:

> We will have the right and duty to defend the insured against any
> "suit" seeking [assault or battery] damages. However, we will have
> no duty to defend the insured against any "suit" seeking damages
> for "bodily injury" caused by an "assault or battery event" to which
> this insurance does not apply. We may, at our discretion, investigate
> any "assault or battery event" and settle any claim or "suit" that may
> result. But: . . . *Our right and duty to defend ends when we have used
> up the applicable sub-limit* of insurance in the payment of
> judgments, settlements or Supplementary Payments under the
> insurance provided by this endorsement.

(*Id.* at 68 (emphasis added).)

> **B.** **The *Pedraza-Zayas* and *Corona* Suits**

The portions of the Policy discussed above were implicated when Insured Defendants

were named in the *Pedraza-Zayas* and *Corona* Suits.  (*See* Doc. Nos. 1-3, 1-4.)

**The *Pedraza-Zayas* Suit.**  In May of 2023, Edward Pedraza-Zayas filed a lawsuit against

Insured Defendants for claims arising from an incident at the bar on April 8, 2023.  (Doc. No. 1

at ¶10; Doc. No. 1-3.)  Pedraza-Zayas alleges that he went to the bar and drank "one or more alcoholic beverages served by [Comly Road] despite [Pedraza-Zayas] being visibly intoxicated." (Doc. No. 1-3 at ¶ 18.)  Pedraza-Zayas alleges that he was then "physically, violently, and without provocation" removed from the bar and that during this altercation, Comly Road's agents and servants "negligently, carelessly, and recklessly manhandled, pushed, shoved, and/or otherwise threw [Pedraza-Zayas] outside of the bar and onto the ground."  (*Id.* at ¶¶ 19– 20.) Pedraza-Zayas brings causes of action predicated upon dram shop liability, negligence, and assault and battery.  (*Id.* at ¶¶ 30–57.)

The ***Corona*** **Suit.**  In November 2024, a separate lawsuit was brought by multiple plaintiffs against Insured Defendants asserting claims related to the tragic death of David Corona on November 20, 2022. (Doc. No. 1-4 at ¶ 1.)  The *Corona* Suit alleges that Robert Falcon, a customer at the bar, exhibited "obnoxious and belligerent conduct" towards David Corona and his family and friends, who were also customers at the bar.  (*Id.* at ¶ 32.)  Shortly after interacting with Falcon, David Corona and his family and friends left the bar and waited outside for their rideshare.  While they were waiting outside the bar, Falcon left, got into his car and "drove past them in a threatening manner, circled back, and then drove his vehicle directly toward [David Corona]."  (*Id.* at ¶ 42.)  After being struck by Falcon, David Corona died from his injuries.  (*Id.* at ¶ 43.)  The Corona lawsuit brings several causes of action, including negligence, negligent infliction of emotional distress, negligence predicated on premises liability, intentional infliction of emotional distress, wrongful death, survival act, and finally, assault and battery.  (*Id.* at ¶¶ 52–137.)

### C.    This Action

After the *Pedraza-Zayas* and *Corona* Suits were filed in state court in May 2023 and November 2024, respectively, Admiral was notified of its duty to defend Comly Road Defendants from claims made in the two Suits.  (Doc. No. 1 at ¶ 13.)  As named Defendants in the *Pedraza-Zayas* and *Corona* Suits, Comly Road Defendants were entitled to defense as insureds to Admiral's Policy.  However, as the two Suits progressed in the state court over the subsequent year, Admiral determined that the two Suits involved demands "likely to exceed the Policy AB Sublimit, as well as defense costs that erode the Sublimit." (Doc. No. 1 at ¶ 15.)  As the Court described above, (*See* Section I.A), under the Policy, Admiral's duty to defend ends when the AB Sublimit is extinguished.  (*See* Doc. No. 1-2.)

In response to Admiral's fear of competing claims to the proceeds of the AB Sublimit—which it maintains applies to both the *Pedraza-Zayas*s and *Corona* Suits—on January 16, 2025, Admiral filed this federal interpleader action against the plaintiffs in the *Pedraza-Zayas* and *Corona* Suits, and the Insured Defendants, including Comly Road Defendants.  Admiral maintains that all of these Defendants are "adverse claimants" to the AB Sublimit within the terms of 28 U.S.C. § 1335(a)(1).  (Doc. No. 1 at ¶ 20.)

## II.    Discussion

Comly Road Defendants move to dismiss Admiral's interpleader complaint on two grounds.  First, they argue that the Court must dismiss the complaint for lack of subject matter jurisdiction.[6]  (Doc. No. 40 at 14–17.)  Second, they argue that Admiral fails to state a claim for

---

[6] A Court "can adjudicate a dispute only if it has subject-matter jurisdiction to hear the asserted claims."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  Here, Comly Road Defendants bring a facial challenge because they "contest[ ] the sufficiency of the complaint because of a defect on its face."  *Williams v. Litton Loan Servicing*, 2018 WL 6600097, at *5 (D.N.J. Dec. 17, 2018) (quotation marks

interpleader because the AB Sublimit is not applicable to the claims in the *Pedraza-Zayas* and *Corona* Suits and thus there is no basis for Admiral's request for an injunction and declaratory judgment. (*Id.* at 18–26.) The Court addresses each argument in turn.

### A.    Subject Matter Jurisdiction

Federal interpleader pursuant to 28 U.S.C. § 1335 is an "equitable remedy [that] 'allows a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) (quoting *NYLife Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 371 n.1 (3d Cir. 1995)). Its purpose is "to relieve an obligor from the vexation of multiple claims in connection with a liability admittedly owed." *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 434–35 (E.D. Pa. 2015) (citing *Francis I. du Pont & Co. v. Sheen*, 324 F.2d 3,4 (3d Cir. 1963)). Interpleader is intended for cases where "the fund itself is the target of the claimants [because] [i]t marks the outer limits of the controversy." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967). Where it is proper, "a stakeholder may file suit, deposit a sum certain with the court, and then withdraw from the proceedings, leaving the competing claimants to litigate amongst themselves." *Midland Nat'l Life Ins. Co. v. Rivas*, 318 F.R.D. 303, 306 (E.D. Pa. 2016); *Allstate Settlement Corp. v. United States*, No. 07-5123, 2008 WL 2221897, at *3 (E.D. Pa. May 28, 2008); *Prudential Ins. Co. of Am. v. Hovis,* 553 F.3d 258, 262 (3d Cir. 2009) (alteration in original) (quoting *Metro Life Ins.,* 501 F.3d at 275).

Section 1335 requires the existence of five elements for the Court to have proper jurisdiction: (1) a stakeholder in "custody or possession" of the funds to be distributed; (2) a

omitted). "Thus, we consider whether Plaintiffs' allegations, attached documents, and referenced proceedings establish the necessary jurisdiction . . . ." *Myers v. Caliber Home Loans, Seterus, Inc.*, 2019 WL 4393377, at *3 (M.D. Pa. Sept. 13, 2019).

minimum amount in controversy of $500, (3) two or more "adverse" claimants asserting a right to the fund; (4) who are of diverse citizenship as defined in 28 U.S.C. § 1332; and (5) the full amount disputed must be deposited in the court registry or a bond made payable to the clerk in the appropriate amount. *Midland,* 318 F.R.D. at 306 (citing *Aetna, Inc. v. Jones*, No. 06–2245, 2007 WL 266423, at *3 (E.D. Pa. Jan. 24, 2007)) (citing *NYLife Distrib.*, 72 F.3d at 374).

The parties do not dispute that three of the elements have been met since Admiral remains in possession of the funds at issue from the Policy, the amount in question exceeds $500, and there is minimal diversity among defendants as required by 28 U.S.C. § 1332. Instead, Comly Road Defendants argue that Admiral cannot show there are two or more claimants to the funds who are "adverse," and Admiral did not deposit or post a bond in the amount remaining on the AB Sublimit or the aggregate policy limits. The Court disagrees.

First, the plaintiffs in the *Pedraza-Zayas* and *Corona* Suits are "adverse claimants" under 28 U.S.C. §1335. The claims advanced in either pending state court action would exhaust the proceeds of the AB Sublimit. As such they are claiming access to the same, limited funds. *See Midland*, 318 F.R.D. at 307 ("Claimants are adverse if they are claiming or may claim the same fund") And Comly Road Defendants are also "adverse claimants" because the AB Sublimit has a wasting limit. This means that the limit of liability available to pay losses is reduced by the costs of defense. Here, if the AB Sublimit applies, the Policy contractually removes Admiral's duty to defend its insured after the sublimit is extinguished.[7] Given these terms, Comly Road Defendants have an adverse interest to either the *Pedraza-Zayas* or *Corona* claims exhausting the policy limits.

---

[7] Section D.1.a.(2) of the Policy states: "Our right and duty to defend ends when we have used up the applicable sub-limit of insurance in the payment of judgments, settlements or Supplementary Payments under the insurance provided by this endorsement." (Doc. No. 1-2 at 68.)

Thus, the plaintiffs in the *Pedraza-Zayas* and *Corona* Suits, as well as Comly Road Defendants are "adverse claimants" under 28 U.S.C. §1335.   For the purposes of this prerequisite, it is sufficient that Admiral has "some real and reasonable fear of exposure to double liability or the vexation of conflicting claims" necessary to satisfy the adversity requirement.  *Id.* (quoting *Bierman v. Marcus,* 246 F.2d 200, 202 (3d. Cir. 1957). Admiral is not "obligated at [its] peril to determine which claimant has the better claim." *Id.*[8]

Next, although Comly Road Defendants are correct that "a proper deposit or bond is a jurisdictional prerequisite to bringing an interpleader" action, 28 U.S.C. § 1335(a)(2); *U.S. Fire Ins. Co. v. Asbestospray, Inc.,* 182 F.2d 201, 210, courts have routinely allowed parties the opportunity to cure this defect.  *See, e.g.*, *CNA Ins. Co. v. Waters*, 926 F.2d 247, 249–50 n. 6 (3d. Cir. 1991) (finding that while plaintiff should have deposited a sum of $45,000 with the court rather than $30,000, "[t]he law is clear[] . . . that [plaintiff] would be permitted to cure this defect by making an additional deposit with the court registry").[9]  And, here, Admiral has already filed its Rule 67 motion confirming its intent to deposit the interpleaded res with the Court following a Court Order.  This is not a basis for dismissal.

---

[8] Comly Road Defendants also argue that Admiral fails to establish adverse claimants because Admiral recently reached a confidential settlement as to the *Pedraza-Zayas* Suit which exhausted the AB Sublimit.  As a result, Comly Road Defendants maintain that there are no longer "competing claimants seeking the funds available in the AB Sublimit" because only the plaintiffs in the *Corona* Suit are left to seek the AB Sublimit.  (Doc. No. 40 at 17.)  But this settlement is immaterial.  Subject matter jurisdiction is determined at the time of filing suit.  *See Lincoln Gen. Ins. Co v. State Farm Mut. Auto. Ins. Co*., 425 F. Supp. 2d 738, 742 (E.D. Va. 2006) ("[J]urisdiction over an interpleader action, once properly established, remains despite the fact that there is no longer a live dispute between any of the original defendant-claimants"); *Truck–a–Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir.1994) (recognizing that a settlement agreement between the claimants in an interpleader action "eliminated the Court's obligation to decide between them, but did not deprive the Court of jurisdiction to order disposition of the property in conformity with the claimants' agreement").

[9] Admiral incorrectly attributes *Wells Fargo Bank N.A. v. Mesh Suture, Inc*., 31 F 4th 1300, 1310 (10th Cir. 2022) to the Third Circuit in its briefing on this issue.  (Doc. No. 44 at 11.)

The Court finds all the jurisdictional elements are met.  The Court denies Comly Road

Defendants' motion to dismiss Admiral's interpleader complaint for lack of subject matter

jurisdiction.

### B.    Declaratory Judgment

With jurisdiction established, the Court next turns to Comly Road Defendants argument

that Count One must be dismissed under Fed. R. Civ. P. 12(b)(6)[10] because the *Pedraza-Zayas*

and *Corona* Suits[11] allege claims that are not limited by the AB Sublimit and therefore Admiral

has a duty to defend, regardless of whether defense costs exceed $100,000.[12]  (Doc. No. 40 at 18

–26.)  In opposition, Admiral argues that "the $100,000 AB Limit is the only limit applicable to

both the Pedraza-Zayas and Corona claims" and thus Admiral is entitled to declaratory judgment

---

[10] In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Id.* (quotation marks and alterations omitted).  Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, Admiral's interpleader complaint attaches the Policy (*See* Doc. No. 1-2) and the underlying *Pedraza-Zayas* and *Corona* complaints, which the Court will consider.  (*See* Doc. No. 1-3, Doc. No. 1-4.)

[11] Because Comly Road Defendants move to dismiss Admiral's interpleader action as it relates to both underlying state court actions, it does not matter that the plaintiffs in the *Corona* Suit chose to answer the complaint and not file a separate motion to dismiss Admiral's complaint.

[12] If coverage in the *Pedraza-Zayas* and *Corona* Suits is limited by the AB Sublimit, then Admiral's duty to defend is also necessarily limited by the AB Sublimit.  This duty to defend continues only until it becomes "absolutely clear" that there is no longer any possibility that the insurer owes its insured a defense.  *Ramera Inc. v. Westfield, Co.*, 814 F.3d 660, 673 (3d. Cir. 2016); *see also Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987) (citations omitted) ("[I]t is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover.").  Therefore, if the Court conclusively determines that there is no coverage above and beyond the AB Sublimit, Admiral's duty to defend Comly Road Defendants beyond the AB Sublimit is similarly extinguished.

that its obligation ends once the $100,000 Sublimit has been used.  (Doc. No. 44 at 8.)  This disagreement is the heart of this case—Does Admiral's Policy limit coverage in the underlying *Pedraza-Zayas* and *Corona* Suits to the $100,000 AB Sublimit or is there potential under the Policy to recover an amount exceeding this AB Sublimit?  For the reasons below, the Court finds that Admiral is correct that the $100,000 AB Sublimit is the only limit applicable and once that amount is extinguished, Admiral's liability under the Policy is discharged.

To determine whether coverage is limited by the AB Sublimit, the Court must consider the Policy itself as well as the underlying *Pedraza-Zayas* and *Corona* complaints as it is "well established that an insurer's duties to [defend and indemnify] under an insurance policy are triggered by the language of the complaint against the insured." *Kvaerner Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d 888, 896 (Pa. 2006).  Under this approach, the "question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)). This principle is known as the "four corners rule." *Lupa*, 903 F.3d at 389 (internal citations omitted).  Pennsylvania law, which governs this analysis, provides no exceptions to this rule.  *See Republic Franklin Ins. Co. v. Ebensburg Ins. Agency*, 542 F. Supp. 3d 315, 321 (M.D. Pa. 2021), *judgment entered*, 581 F. Supp. 3d 680 (M.D. Pa. 2022), and *aff'd*, No. 21-2265, 2023 WL 3918743 (3d Cir. June 9, 2023).

The Court considers the language of the Policy before turning to the *Pedraza-Zayas* and *Corona* complaints.

### 1.    The Policy

Under Pennsylvania law, "[c]ontract interpretation is a question of law that requires the

court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (alteration in original) (quoting *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005)); *see also Pa. Env't Def. Found. v. Pennsylvania*, 255 A.3d 289, 304 (Pa. 2021). Courts applying Pennsylvania law are required to give effect to a contract's clear and unambiguous language. *401 Fourth Street, Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005); *see also Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020). A contract's terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999); *see also Atain*, 2018 WL 637579, at *2 ("Contract language is ambiguous if it is reasonably capable of more than one meaning."). However, courts must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity," and must give effect to a contract's clear and unambiguous terms. *Madison Constr. Co.*, 735 A.2d at 106; *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) ("In construing the policy, if the words of the policy are clear and unambiguous, the court must give them their plain and ordinary meaning. . . . Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist."). "The mere fact that the parties do not agree on the proper construction does not make a contract ambiguous." *See Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012) (citing *Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. Ct. 1984)).

Here, the plain language of the Policy states that Section A of the AB Sublimit modifies Comly Road Defendants' coverage under the Commercial General Liability Coverage Form and Liquor Liability Coverage Form. Specifically, it provides:

> A. *Except to the extent coverage is afforded under COVERAGE D below*, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", "injury" or damages of any kind, including costs or expenses, actually or **allegedly arising out of**, related to, caused by, contributed to by, or in any way connected with:
>
>> 1. The actual, **alleged** or threatened assault or battery by anyone of any person while on or adjacent to the premises of any insured; or
>>
>> 2. The actual, **alleged** or threatened assault or battery by anyone of any person if in any way connected with the operations of any insured . . . .

(Doc. No. 1-2 at 67 (emphases added).)  The Court examines each emphasized part of Section A in turn below.

First, there is no dispute that the italicized, opening clause of Section A unambiguously precludes coverage for "assault or battery" claims under any provision of the Policy other than Coverage D, which extends $100,000 to "[e]ach [o]ccurance" and in the "[a]ggregate" for "assault or battery events." (*Id*.)

Second, and more significantly, the bolded language in Section A eliminates all claims under the Policy for bodily injury (beyond the AB Sublimit) if an alleged assault or battery is a concurrent cause of the underlying injury alleged.  The Court interprets the contract in this manner because of the inclusion of the words "arising out of."  (*Id*.)  Under Pennsylvania law, "arising out of means causally connected with, not proximately caused by.  But for causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy." *Forum Ins. Co. v. Allied Sec. Inc.,* 866 F.2d 80, 82 (3d Cir. 1989) (internal citation omitted.)  "Courts have uniformly interpreted 'arising out of' as providing liability if the alleged injuries would not have occurred 'but for' the operations or negligence of the named insured." *Liberty Surplus Ins. Corp. v. McFaddens at Ballpark, LLC*, 116 F. Supp. 3d 447, 458 (E.D. Pa. 2015) (quoting *Md. Cas. Co.*

*v. Regis Ins. Co.*, 96–cv–1790, 1997 WL 164268, at *3 (E.D. Pa. Apr. 9, 1997)); *see also Markel Int'l Ins. Co. v. 2321 Salam, Inc.*, 08-cv-1052, 2009 WL 1220557, at *6 (E.D. Pa. Mar. 31, 2009) (noting that "arising out of" in connection with assault and battery exclusion means causally connected with and is satisfied by but-for causation). Therefore, if an alleged assault or battery is a "but-for" cause of any bodily injury alleged in a complaint, all related claims arising out of the same injury are excluded by Section A of the Policy.

Another case in this district, *First Mercury Ins. Co. v. Rossi*, supports the Court's interpretation here. No. 10-cv-1097, 2011 WL 1235092 (E.D. Pa. April. 1, 2011). The assault or battery exclusion in *First Mercury* included the words "in any way connected with assault and/or battery." *Id.* at *6. ("[T]he Policy excludes claims for bodily injury 'based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way connected with 'assault' and/or 'battery.'"). In *First Mercury*, the Court found that "[t]his exclusion is broad enough to cover negligence claims that are connected with assault or battery claims." *Id.*; *see also Certain Underwriters at Lloyds London v. Peerstar, LLC*, 649 F. Supp. 3d, 73, 81 (E.D. Pa. 2023) (applying a sexual abuse sublimit towards plaintiff's negligence claims against Defendants because they were "unavoidably tethered to, and based on" plaintiffs allegations of sexual abuse and misconduct). The same is true of Section A's exclusion. And in fact, Section A's exclusion goes further than traditional but-for causation to preclude claims under the Policy that are "in any way connected with" an alleged assault or battery. (Doc. No. 1-2 at 67.)

The inclusion of the word "alleged" three times in Section A is also not without consequence. The Policy is clear: proving an assault or battery occurred is not necessary for related claims to be precluded under Section A. *See* October 23, 2025, Oral Arg. Rough Tr. ¶¶ 23–24 ("Whether it's an actual assault is irrelevant to that exclusion."). To this end, Admiral

is correct that: "Section A of the AB Form excludes all bodily injury claims–whether alleging negligence or not – if a concurrent cause of injury is an [alleged] assault or battery." (Doc. No 44 at 13.)

With the scope of coverage clarified, the Court turns to the four corners of the *Pedraza-Zayas* and *Corona* Suits to determine if the claims asserted "arise out of" or are "in any way connected with" an "alleged" assault or battery.

### 2.    *Pedraza-Zayas* Suit

A review of the four corners of the *Pedraza-Zayas* complaint confirms that the Plaintiff's claims not only include assault and battery but also include claims for dram shop liability and negligence that arise out of and/or relate to the alleged assault and battery. (Doc. No. 1-3 at ¶¶ 30–57.) The allegations state that on the evening of April 8, 2023, Pedraza-Zayas went to the bar and drank "one or more alcoholic beverages served by [Comly Road] despite [Pedraza-Zayas] being visibly intoxicated." (*Id.* at ¶ 18.) A short while later, "[Comly Road] made the decision to remove [Pedraza-Zayas] from the premises and did so physically, violently, and without provocation and in such a manner that [Pedraza-Zayas] was caused to suffer serious and permanent injury to his lower extremity which required surgical repair." (*Id.* at ¶ 19.) Specifically, Pedraza-Zayas alleges that "[Comly Road's] agents and servants negligently, carelessly, and recklessly grabbed, manhandled, pushed, shoved, and/or otherwise threw [Pedraza-Zayas] outside of the bar and onto the ground." (*Id.* at ¶ 20.)

Given these allegations, the Court finds that the *Pedraza-Zayas* Suit alleges that an assault and battery occurred. It is clear on the face of the *Pedraza-Zayas* complaint that all the claims are "arising out of, related to, caused by, contributed to by, or in any way connected with" the alleged assault and battery. (Doc. No. 1-2 at 67.) To this end, Pedraza-Zayas pleads that his

"*injuries were a direct result* of the [Comly Road's] agents, servants, and/or employees and workmen supplying liquor to Plaintiff."  (Doc. No. 1-3 at ¶ 24) (emphasis added).

      **3.**    *Corona* **Suit**

Likewise, a review of the four corners of the *Corona* complaint shows that the claims include allegations of assault and battery that trigger the Policy's AB Sublimit.  On November 20, 2022, David Corona and some family and friends went to the bar to celebrate one friend's return from overseas military service.  (Doc. No. 1-4 at ¶ 25.)  While at the bar, a separate customer, Robert Falcon, began to aggressively harass Sarah Corona with "obnoxious and belligerent conduct."  (*Id.* at ¶¶ 31–32.)  Ms. Corona asked Falcon to leave her alone and walked away.  (*Id.* at ¶ 33.)  But Falcon continued to harass Ms. Corona and his behavior "escalate[d] to such an extent" that he had to be physically restrained by security guards employed by the bar.  (*Id.* at ¶ 37.)  While Ms. Corona was being harassed by Falcon, her brother, the decedent, David Corona, stood near her in a protective manner.  (*Id.* at ¶ 38.)  After the security guards intervened, Sarah and David Corona and their family and friends left the bar and waited outside for their rideshare.  Falcon also left the bar and got into his car.  (*Id.* at ¶ 40.)  Falcon drove past where the Coronas and their family and friends were waiting and then, "in a threatening manner, circled back, and . . . drove his vehicle directly toward [David Corona]."  (*Id.* at ¶ 42.).  Falcon hit David Corona, and he died in the street from his injuries.  (*Id.* at ¶ 43.)

The Court finds that the *Corona* complaint alleges that an assault or battery occurred, and therefore, the other non-assault or battery claims are also limited by the AB Sublimit because those claims arise out of or relate to the alleged assault or battery.[13]  (Doc. No. 1-2 at 67.)  But

---

[13] The *Corona* Suit also brings claims for negligence, negligent infliction of emotional distress, negligence predicated on premises liability, intentional infliction of emotional distress, wrongful death, and survival act.  (Doc. No. 1-3 at ¶¶ 52–137.)  However, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead, it is necessary

for the alleged assault or battery by Falcon, David Corona's injuries and subsequent death would not have occurred.

Comly Road Defendants argue unpersuasively that the factual allegations describing Falcon's operation of the vehicle "implicate negligence, and therefore, when "resolving all doubt in favor of coverage (as required), these allegations potentially implicate claims wholly unreliant on intentional conduct (much less, an intent to injure), and [therefore, are] not subject to the AB Limit." (Doc. No. 40 at 23.)  While the *Corona* Suit alleges both negligence and assault or battery claims against Falcon, the Court need not determine which allegation is more persuasive and whether Falcon acted with "an intent" to injure Mr. Corona. (*Id*. at 24.)  Section A does not require a party—or this Court—to *prove* an assault or battery occurred for claims to be excluded. The facts allege assault and battery which in turn means Section A applies to any claims— including negligence—that are "connected with" the alleged assault or battery claims. (*Id*. at 40 at 23.)  *See Essex Ins. Co. v. RMJC, Inc*., 306 F. Appx. 749, 753 (3d Cir. 2009) ("Nor does it matter whether the assailant was also the negligent party for purposes of the state-court judgment, so long as the assault was a 'but for' cause of the injuries for which RMJC was held liable.").

In reaching this conclusion, the Court agrees with Admiral that *Liberty Surplus Ins. Corp. v. McFaddens at Ballpark, LLC*, is instructive. 116 F. Supp. 3d 447 (E.D. Pa. 2015).  In *Liberty Surplus*, the defendant highlighted the theories of negligence included in the underlying complaint, such as negligent security practices and violations of the Pennsylvania Dram Shop Act, in an effort to avoid triggering an assault and battery sublimit. 116 F. Supp. 3d at 459.  The court nonetheless limited plaintiff's claim to the assault and battery sublimit after determining

---

to look at the factual allegations contained in the complaint." *Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).  Here, the allegations establish that an alleged assault and battery allegedly occurred.

that there was "no genuine dispute regarding whether [the plaintiff's] injuries would not have occurred 'but for' the assault and battery of [the bar's staff]." *Id.* Similarly, in the *Corona* complaint, the claims asserted, including the negligence claims against the bar and against Falcon, arise from the alleged assault and battery which occurred when Falcon hit David Corona with his car and David died from these injuries.

*       *       *

The Court finds that neither the *Pedraza-Zayas* Suit nor the *Corona* Suit implicates coverage under the Policy beyond the $100,000 AB Sublimit. Accordingly, Comly Road Defendants' motion to dismiss is denied. Admiral is entitled to a declaratory judgment that the $100,000 AB Sublimit applies to both state court actions and an injunction pursuant to 28 U.S.C. § 2361 from any future claims that Admiral improperly paid the limits of the Policy.

## III.     CONCLUSION

For the reasons set forth above, Defendant Comly Road Defendants' motion to dismiss is denied. The Court finds Admiral is entitled to a declaratory judgment that the $100,000 AB Sublimit is the maximum coverage available under the Policy for both the *Corona* and *Pedraza-Zayas* Suits and an injunction pursuant to 28 U.S.C. §2361.[14] An appropriate order follows.

---

[14] The Court limits the declaratory judgment to just the interpleaded res. "Section 2361 authorizes a district court to enter an order restraining all claimants from instituting a proceeding in any state or federal court affecting the *interpleaded res*." *N.J. Sports Prods*, 15. F. Supp. 2d at 545 (citing *Provident Mut. Life Ins. Co. of Phila. v. Ehrlich*, 508 F.2d 129 (3d Cir. 1975)) (emphasis added). Admiral's request in its complaint for relief for its breach of contract and bad faith claims is not proper and the Court denies such relief as "overbroad." *See Asbestospray, Inc.*, 182 F.3d at 211.